UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**BRYANA BIANG**,

       Plaintiff,

v.                                                                                     Case No.
                                                                                          Hon.

**BRADLEY P. BENGTSON, M.D., P.C.**
d/b/a BENGTSON CENTER FOR AESTHETICS
AND PLASTIC SURGERY, a Michigan corporation,

       Defendant.
_____/

SOMMERS SCHWARTZ, P.C.
Tad T. Roumayah (P74081)
Nathan A. Robbins (P87794)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
troumayah@sommerspc.com
nrobbins@sommerspc.com
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, BRYANA BIANG, by and through her attorneys,

SOMMERS SCHWARTZ, P.C., and for her Complaint against Defendant,

BRADLEY P. BENGTSON, M.D., P.C. d/b/a BENGTSON CENTER FOR

AESTHETICS AND PLASTIC SURGERY, states as follows:

1

## PARTIES

1.      Plaintiff, Bryana Biang ("BIANG"), is an individual currently residing in the City of Lowell, Kent County, State of Michigan. At all times relevant to this Complaint, Plaintiff resided in the Western District of Michigan.

2.      Defendant, Bradley P. Bengtson, M.D., P.C. d/b/a Bengtson Center for Aesthetics and Plastic Surgery ("BCAPS"), is a professional corporation and private employer doing business in the City of Grand Rapids, Kent County, State of Michigan. At all relevant times to this Complaint, Defendant conducted business in the Western District of Michigan.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4.      The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

5.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District, conducts business in this District, and the acts and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## <u>GENERAL ALLEGATIONS</u>

6.  BIANG is a twenty-seven-year-old Native American woman and a member of the Sault Ste Marie Tribe of Chippewa Indians.

7.  BIANG began her employment with BCAPS on September 26, 2022 as its Sterilization and Supply Coordinator.

8.  Throughout BIANG's employment, BCAPS also referred to her position as a Sterile Processing Technician.

9.  While at BCAPS, BIANG earned $28.00 per hour and reported to Christa Ebmeyer (Materials Management Department Lead), who is Caucasian.

10.  On February 8, 2023, Dr. Bradley Bengtson (Owner of BCAPS), who is Caucasian, learned that BIANG is Native American.

11.  Upon learning of BIANG's race and national origin, Dr. Bengtson exclaimed to BIANG, "**I didn't know you were an Injun!**"

12.  Dr. Bengtson then approached other BCAPS staff members and asked the staff, "**did you know [BIANG] is an Injun?**"

13.  Soon thereafter, BIANG reported Dr. Bengtson's conduct to Ms. Ebmeyer and advised that the use of the term "Injun" in the workplace made BIANG incredibly uncomfortable.

14.  Indeed, the word "Injun" is an extremely offensive and racist slur historically used to degrade Native American people. *See e.g.*

3

https://www.collinsdictionary.com/us/dictionary/english/injun;

https://www.merriam-webster.com/dictionary/Injun.

15.     On or about May 11, 2023, BCAPS gifted female employees a flower to celebrate Mother's Day.

16.     BCAPS gifted a flower to its female employees who are mothers and to its female employees who are not mothers.

17.     BCAPS did not gift BIANG a flower for Mother's Day.

18.     That same day, BIANG learned that every female employee except for BIANG had been gifted a flower by BCAPS.

19.     On or about September 2023, BCAPS interviewed a prospective candidate (the "Candidate") for an open position at the company.

20.     Following the job interview, BIANG asked Jennifer Adkins (Surgical Schedule Coordinator) if Ms. Adkins believed the Candidate would be joining BCAPS.

21.     Ms. Adkins advised BIANG that she did not believe the Candidate would be hired.

22.     Furthermore, Ms. Adkins explained that, after the interview, Dr. Bengtson commented that the Candidate "didn't have the right set" while making a circular gesture with his hands, indicating that he believed the Candidate was overweight.

23.     Throughout the Fall of 2023, Ms. Ebmeyer and Missy Tava (Materials and Facilities Coordinator), who is Caucasian, used the term "**Injun**" when referring to BIANG.

24.     Throughout all of Fall 2023, Ms. Ebmeyer and Ms. Tava repeatedly called BIANG "**the little Injun that could**."

25.     Throughout all of Fall 2023, Ms. Ebmeyer and Ms. Tava referenced offensive stereotypes about Native Americans in BIANG's presence.

26.     Ms. Ebmeyer and Ms. Tava's references included, but were not limited to, pejorative comments about "spirit animals," "pow-wows," and "Indian Givers."

27.     On or about Fall 2023, BIANG discussed a scholarship offered to Native Americans which she intended to apply for.

28.     In response, Ms. Tava claimed that scholarships offered to "people of color" (such as Native Americans like BIANG) were "unfair" because Ms. Tava did not have those same opportunities as a Caucasian.

29.     On or about October 13, 2023, BIANG sent a text message to Ms. Ebmeyer and advised that Ms. Ebmeyer and Ms. Tava's constant and racially offensive remarks regarding Native American people were inappropriate and expressed that she did not find the comments to be amusing.

30.     In a subsequent text message, BIANG reminded Ms. Ebmeyer that she had previously explained that the use of the term "Injun" was offensive.

31.    Ms. Ebmeyer responded to BIANG's text messages and attempted to characterize her and Ms. Tava's conduct as "dark humor" which Ms. Ebmeyer erroneously claimed, "we all thought was funny in the moment."

32.    On or about October 17, 2023, BIANG discovered that her access to Nextech software (which was required for her to do her job) had been disabled.

33.    Accordingly, BIANG promptly informed Ms. Ebmeyer of the access issue and advised that the lack of access rendered BIANG unable to complete various tasks associated with her position.

34.    In response, Ms. Ebmeyer suggested that BIANG wait "a day or two."

35.    On or about October 19, 2023, BIANG sent an email to Ms. Ebmeyer advising that her access to Nextech had yet to be restored.

36.    In response, Ms. Ebmeyer failed to suggest any solution to remedy the issue and, instead, only instructed BIANG to **not** contact Anna Bengtson (Chief Strategy Officer) for assistance.

37.    Soon thereafter, BIANG learned that Ms. Tava had been experiencing similar access issues with Nextech Software.

38.    Furthermore, BIANG learned that Ms. Ebmeyer had personally contacted Ms. Bengtson on Ms. Tava's behalf to ensure that Ms. Tava's access to Nextech software was promptly restored.

39.    However, Ms. Ebmeyer had not similarly contacted Ms. Bengston on behalf of BIANG to resolve BIANG's access issues.

40.    On or about October 25, 2023, Anne Eikenhout (Chief Financial Officer), who is Caucasian, instructed BIANG to attend a meeting with Ms. Eikenhout, Lisa Morren (Office Manager) who is Caucasian, and Dr. David Alfonso (Physician and Owner).

41.    BIANG attended the meeting as instructed.

42.    During the October 25 meeting, Ms. Eikenhout informed BIANG that BCAPS was placing BIANG on a Performance Improvement Plan ("PIP").

43.    During the meeting, BIANG reiterated that she found it inappropriate and offensive that Dr. Bengtson, Ms. Ebmeyer, and Ms. Tava had repeatedly referred to her as an "**Injun**" and used other offensive language about BIANG's race and national origin in conversation.

44.    In response, Ms. Eikenhout claimed that BIANG had not reported the discriminatory conduct to management.

45.    In addition, Ms. Eikenhout claimed that BIANG's alleged failure to report prevented BCAPS from addressing the discriminatory conduct.

46.    BIANG reminded Ms. Eikenhout that the conduct had been reported to BIANG's supervisor, Ms. Ebmeyer.

47.    Furthermore, BIANG reminded Ms. Eikenhout that Ms. Ebmeyer is a member of management at BCAPS.

48.    On or about October 27, 2023, BIANG attended a meeting with Ms. Eikenhout.

49.    During the meeting, Ms. Eikenhout discussed Ms. Ebmeyer and Ms. Tava calling BIANG "**the little Injun that could**."

50.    Ms. Eikenhout attempted to justify Ms. Ebmeyer and Ms. Tava's conduct by suggesting that the statement "**the little Injun that could**" had merely been a "joke."

51.    In addition, Ms. Eikenhout claimed that BIANG should not have been offended by Ms. Ebmeyer and Ms. Tava's conduct.

52.    Throughout the October 27, 2023 meeting, Ms. Eikenhout continuously repeated the statement "**the little Injun that could**" to BIANG.

53.    On or about December 2023, BIANG attended a BCAPS holiday party.

54.    During the holiday party, other staff members openly discussed their 2023 holiday bonuses.

55.    Through other staff members discussing their respective holiday bonuses, BIANG learned that she had received a substantially smaller holiday bonus than all other BCAPS staff on the surgery and materials management teams.

56.    BIANG received a smaller holiday bonus in 2023 than all other BCAPS staff on the surgery and materials management teams.

57.    As a result, BIANG expressed her disappointment with receiving a comparatively smaller holiday bonus.

58.    That same month, BIANG attended a sixty-day PIP meeting with Ms. Eikenhout.

59.    During the meeting, Ms. Eikenhout stated that BCAPS was unhappy with BIANG having conversations about her holiday bonus with her colleagues.

60.    BCAPS did not similarly object to or express displeasure with any other BCAPS employees discussing their holiday bonuses, including the employees who discussed their holiday bonuses with BIANG at the December 2023 holiday party.

61.    Furthermore, during the meeting, Ms. Eikenhout and BIANG again discussed Dr. Bengtson, Ms. Ebmeyer, and Ms. Tava's use of the term "**Injun**."

62.    Ms. Eikenhout attempted to make light of the prior use of offensive language by repeatedly using the term "**Injun**" in a lighthearted and joking manner.

63.    In addition, Ms. Eikenhout claimed that BIANG should not have been offended by Dr. Bengtson, Ms. Ebmeyer, and Ms. Tava's discriminatory conduct.

64.    On or about January 2024, BIANG attended another meeting with Ms. Eikenhout to discuss BIANG's PIP.

65.    During the meeting, Ms. Eikenhout instructed BIANG to not discuss her holiday bonus, her pay, or any other terms and conditions of her employment with others.

66.    On or about February 6, 2024, Ms. Eikenhout informed BIANG that BCAPS had elected to extend BIANG's PIP to the end of February 2024.

67.    Ms. Eikenhout claimed that the extension resulted from "people" being "uncomfortable" with BIANG previously discussing her holiday bonus.

68.    BIANG informed Ms. Eikenhout that she (BIANG) had been extremely uncomfortable with her working conditions at BCAPS for months.

69.    In response, Ms. Eikenhout told BIANG, "good, you should be."

70.    On or about February 29, 2024, BIANG contacted the Candidate who interviewed for a position at BCAPS the previous fall, via Facebook Messenger.

71.    BIANG sent the Candidate a Facebook Messenger message stating: "The day of your interview, a colleague (kind of friend) told me that you weren't hired because you weren't [sic] 'she didn't have the right set'. Referring to your weight and figure."

72.    On or about March 1, 2024, BIANG's PIP ended and BCAPS expressed she would no longer be subject to the PIP.

73.    On or about March 2024, the Candidate contacted BCAPS regarding BIANG's disclosure of Dr. Bengtson's discriminatory comments about the Candidate.

74.    Soon thereafter, BCAPS employed outside counsel to ostensibly investigate the discriminatory comments made by Dr. Bengtson regarding the Candidate.

75.    On or about the week of March 18, 2024, BCAPS posted job openings for a "Sterile Processing Technician" and a "Materials Coordinator."

76.    The listed job responsibilities for both positions overlapped substantially with the responsibilities of BIANG's position.

77.    That same week, BCAPS took pictures of all members of BIANG's team to include with the job postings.

78.    However, BCAPS excluded BIANG from these team member photos.

79.    On or about March 26, 2024, Mary Tabin, Esq. (counsel for BCAPS), interviewed BIANG in connection with the investigation into Dr. Bengtson's discriminatory comments about the Candidate.

80.    In addition to BIANG and Ms. Tabin, Ms. Ebmeyer, Dr. Alfonso, and Ms. Eikenhout attended the interview.

81.     During the course of the interview, BIANG informed Ms. Tabin of other employees', including Dr. Bengston's, repeated use of the term "**Injun**" and other discriminatory comments in reference to BIANG's race/national origin.

82.     At no point did Ms. Tabin or the other attendees at the meeting indicate that BCAPS would do anything to investigate BIANG being called an "**Injun**."

83.     Near the end of the interview, Ms. Tabin informed BIANG that BCAPS was placing BIANG on an unpaid suspension, effective immediately.

84.     On or about March 29, 2024, BCAPS sent BIANG a termination letter.

85.     The termination letter stated:

> [BCAPS] recently received a report regarding an applicant who applied for a position with BCAPS. The practice retained outside counsel to conduct an investigation into this issue. As part of its investigation, the investigator met with you on March 27, 2024, at 4:30 p.m. Dr. Alfonso, Anne Eikenhout, and Christa Ebmeyer were present during the interview. At the beginning of the interview, the investigator explained her role and provided ground rules for the investigation and meeting. One specific ground rule the investigator gave was that you were required to fully cooperate and be completely truthful in the meeting and investigation. You were also informed that your employment would be terminated if you did not tell the truth. You stated you understood.

> During your meeting, you were asked whether you ever communicated to the applicant that she was not hired because of her weight. You responded with an emphatic "No. I did not tell her she was not hired because of her weight. That would not be a truthful statement for Bree [referring to yourself in the third person] to draw such a conclusion because I was not part of the interview."
> . . .

12

> You lied to the investigator when you said that you never communicated to the applicant that she was not hired because of her weight.
>
> . . .
>
> Because of the false statements you made during the interview, your employment is terminated, effective March 28, 2024.

86.    BCAPS, through its termination letter, misrepresented BIANG's statements during the interview with Ms. Tabin to imply BIANG made false statements.

87.    BCAPS, through its termination letter, misrepresented other statements made during the interview with Ms. Tabin, including by Ms. Tabin and others.

88.    On or about December 4, 2024 BIANG filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for National Origin Discrimination and Sex Discrimination.

89.    At the time BIANG filed a Charge of Discrimination with the EEOC, BIANG was not represented by counsel and had not retained her current legal counsel.

90.    On December 11, 2024, the EEOC issued BIANG a Notice of Right to Sue letter.

## COUNT I: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## AND

## COUNT II: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

91.     BIANG incorporates Paragraphs 1 through 90.

92.     Title VII prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment because of the employee's national origin. 42 U.S.C. 2000e-2(a)(1).

93.     The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's national origin. MCL § 37.2202(1)(a).

94.     BCAPS is an employer within the meaning of Title VII and the ELCRA. See 42 U.S.C. § 2000e(b). and MCL § 37.2201(a).

95.     At all relevant times, BCAPS had a duty under Title VII and the ELCRA not to discharge or otherwise discriminate against BIANG because of her national origin (Native American).

96.     BCAPS violated BIANG's civil rights by discriminating against BIANG because of her national origin, which included but was not limited to:

    a)     Repeatedly calling BIANG an "Injun."

14

b)   Pejoratively referencing Native American stereotypes such as "spirit animals," "pow-wows" and "Indian Givers" in conversations with BIANG.

c)   Claiming offensive references to BIANG's national origin were "dark humor" and "jokes."

d)   Failing to remedy the negative treatment BIANG experienced based on her national origin after she complained of the negative treatment.

e)   Admonishing BIANG from speaking about the terms and conditions of her employment while permitting employees who are not Native American to engage in the same conduct.

f)   Placing BIANG on a PIP.

g)   Placing BIANG on an unpaid suspension.

h)   Terminating BIANG's employment.

i)   Treating BIANG differently than similarly situated employees within BCAPS who are not Native American and who were not subjected to the same negative treatment.

97.   If BIANG had not been Native American, she would not have been treated in the same manner.

98.   As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, BIANG has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish and emotional distress, loss of professional reputation, attorney fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## AND

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

99.     BIANG incorporates Paragraphs 1 through 90.

100.    Title VII prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment because of the employee's race. 42 U.S.C. 2000e-2(a)(1).

101.    The ELCRA prohibits employers from discriminating against any individual regarding the compensation, terms, conditions, or privileges of employment, because of the employee's race. MCL § 37.2202(1)(a).

102.    BCAPS is an employer within the meaning of Title VII and the ELCRA. See 42 U.S.C. § 2000e(b). MCL § 37.2201(a).

16

103.  At all relevant times, BCAPS had a duty under Title VII and the ELCRA not to discharge or otherwise discriminate against BIANG because of her race (Native American/American Indian).

104.  BCAPS violated BIANG's civil rights by discriminating against BIANG because of her race, which included but was not limited to:

a)    Repeatedly calling BIANG an "Injun."

b)    Pejoratively referencing Native American stereotypes such as "spirit animals," "pow-wows" and "Indian Givers" in conversation with BIANG.

c)    Claiming offensive references relating to BIANG's race were "dark humor" and "jokes."

d)    Failing to remedy the negative treatment BIANG experienced based on her race after she complained of the negative treatment.

e)    Admonishing BIANG from speaking about the terms and conditions of her employment while permitting employees who are not Native American/American Indian to engage in the same conduct

f)    Placing BIANG on a PIP.

g)    Placing BIANG on an unpaid suspension.

h)    Terminating BIANG's employment.

i)    Treating BIANG differently than similarly situated employees within BCAPS who are of a different race and who were not subjected to the same negative treatment.

105.   If BIANG had not been Native American/American Indian, she would not have been treated in the same manner.

106.   As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, BIANG has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish and emotional distress, loss of professional reputation, attorney fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

### COUNT V: RETALIATION FOR OPPOSING RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

### AND

### COUNT VI: RETALIATION FOR OPPOSING RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

107.    BIANG incorporates Paragraphs 1 through 90.

108.    Title VII prohibits an employer from retaliating or discriminating against an employee because the employee has opposed an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a).

109.    The ELCRA prohibits a person from retaliating or discriminating against an individual because the individual has opposed a violation of the ELCRA. MCL § 37.2701(a).

110.    BCAPS is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

111.    BCAPS is a "person" within the meaning of the ELCRA. MCL § 37.2103(h).

112.    It is a violation of Title VII and the ELCRA for an employer to discharge or to discriminate against an individual because of the individual's race or national origin. MCL § 37.2202(1)(a).

113.    BCAPS violated Title VII and the ELCRA when it discriminated against BIANG because of her race and national origin.

114.    BIANG opposed BCAPS' violations of Title VII and the ELCRA by repeatedly complaining to BCAPS about employees' use of the term "Injun" and other discriminatory conduct exhibited by BCAPS employees.

115.    BCAPS violated BIANG's civil rights by retaliating against BIANG for her opposition to BCAPS' violations of Title VII and the ELCRA, which included but was not limited to:

        a)    Placing BIANG on a PIP.

        b)    Paying BIANG less than her similarly-situated non-Native American peers.

   c) Posting job openings for positions substantially similar to or identical to BIANG's position.

   d) Placing BIANG on an unpaid suspension.

   e) Terminating BIANG's employment.

116. As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, BIANG has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish and emotional distress, and loss of professional reputation, attorney fees, costs, and interest.

  **WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

## COUNT VII: RETALIATION FOR OPPOSING WEIGHT DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

117. BIANG incorporates Paragraphs 1 through 90.

118. The ELCRA prohibits a person from retaliating or discriminating against an individual because the individual has opposed a violation of the ELCRA. MCL § 37.2701(a).

119. BCAPS is a "person" pursuant to the ELCRA. MCL § 37.2103(h).

120.    It is a violation of the ELCRA for an employer to fail or to refuse to hire an individual or to otherwise discriminate against an individual because of the individual's weight. MCL § 37.2202(1)(a).

121.    BCAPS violated the ELCRA when it failed and refused to hire the Candidate because of her weight and when it discriminated against the Candidate because of her weight.

122.    BIANG opposed BCAPS' violations of the ELCRA by informing the Candidate of Dr. Bengtson's comments about the Candidate.

123.    At all relevant times, BCAPS had a duty under the ELCRA not to retaliate or discriminate against BIANG because of her opposition to BCAPS' violations of the ELCRA.

124.    BCAPS violated BIANG's civil rights by retaliating against BIANG for her opposition to BCAPS' violations of the ELCRA, which included but was not limited to:

a)    Posting job openings for positions substantially similar to or identical to BIANG's position.

b)    Placing BIANG on an unpaid suspension.

c)    Terminating BIANG's employment.

125.    As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, BIANG has suffered damages, including but not limited to, loss of past

and future income and employee benefits, mental anguish and emotional distress, and loss of professional reputation, attorney fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, together with interest, costs, and reasonable attorneys' fees.

## COUNT VIII: RETALIATION FOR OPPOSING SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## AND

## COUNT IX: RETALIATION FOR OPPOSING SEX DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

126.    BIANG incorporates Paragraphs 1 through 90.

127.    Title VII prohibits an employer from retaliating or discriminating against an employee because the employee has opposed an unlawful employment practice under Title VII.  42 U.S.C. § 2000e-3(a).

128.    The ELCRA prohibits a person from retaliating or discriminating against an individual because the individual has opposed a violation of the ELCRA. MCL § 37.2701(a).

129.    BCAPS is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

22

130.    BCAPS is a "person" within the meaning of the ELCRA. MCL § 37.2103(h).

131.    It is a violation of Title VII and the ELCRA for an employer to fail or refuse to hire or otherwise discriminate against an individual because of the individual's sex. 42 U.S.C.

132.    BCAPS violated Title VII and the ELCRA when it failed and refused to hire the Candidate because of her sex and when it discriminated against the Candidate because of her sex.

133.    BIANG opposed BCAPS' violations of Title VII by informing the Candidate of Dr. Bengtson's sexist comments about the Candidate.

134.    At all relevant times, BCAPS had a duty under Title VII and the ELCRA not to retaliate or discriminate against BIANG because of her opposition to BCAPS' violations of Title VII and the ELCRA.

135.    BCAPS violated BIANG's civil rights by retaliating against BIANG for her opposition to BCAPS' violations of Title VII and the ELCRA, which included but was not limited to:

  a)    Posting job openings for positions substantially similar to or identical to BIANG's position.

  b)    Placing BIANG on an unpaid suspension.

  c)    Terminating BIANG's employment.

136.    As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, BIANG has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish and emotional distress, and loss of professional reputation, attorney fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

SOMMERS SCHWARTZ, P.C.

*/s/ Tad T. Roumayah*
Tad T. Roumayah (P74081)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300

Dated:    March 10, 2025

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**BRYANNA BIANG,**

      Plaintiff,

v.                                                                                                    Case No.
                                                                                                       Hon.

**BRADLEY P. BENGTSON, M.D., PC**
d/b/A BENGTSON CENTER FOR AESTHETICS
AND PLASTIC SURGERY, a Michigan corporation,

      Defendant.
_____/
SOMMERS SCHWARTZ, P.C.
Tad T. Roumayah (P74081)
Nathan A. Robbins (P87794)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
troumayah@sommerspc.com
nrobbins@sommerspc.com
_____/


## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, Bryana Biang, by and through her attorneys, Sommers Schwartz, P.C., and hereby demand a trial by jury relative to the above matter.

SOMMERS SCHWARTZ, P.C.

*/s/ Tad T. Roumayah*
Tad T. Roumayah (P74081)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300

Dated:        March 10, 2025